IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT BENNETT, : No. 3:19cv521
      Plaintiff :
: (Judge Munley)
   v. :
:
TALEN ENERGY CORPORATION; :
RIVERSTONE HOLDINGS, LLC; and :
SUSQUEHANNA NUCLEAR, LLC, :
      Defendant :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court for disposition is the motion to dismiss portions of Plaintiff Scott Bennett's complaint filed by the defendants, Talen Energy Corporation and Susquehanna Nuclear, LLC. The parties have briefed their respective positions, and the matter is ripe for decision.

**Background[1]**

Defendants operate a nuclear power plant. (Doc. 1, Compl. ¶ 9). From 1997 through September 2007, plaintiff worked as a contractor for the defendants. (Id. ¶ 14). In September 2007, Defendant Susquehanna Nuclear, LLC, hired plaintiff as a full-time production foreman. (Id. ¶¶ 13-14).

---

[1] The facts found in the background section are derived from plaintiff's complaint, which we must accept as true in deciding the instant motion to dismiss. Beyond this motion, however, we make no finding as to the veracity of the complaint's allegations.

The Nuclear Regulatory Commissioner (hereinafter "NRC") has promulgated extensive regulations, which are applicable to the defendants. (Id. ¶ 9). For example, the NRC requires all nuclear power plants to "adopt Fitness for Duty ("FFD") programs that prescribe Unescorted Access ("UA") requirements for employees entering secured areas of the nuclear facility." Id. ¶ 10. The FFD programs provide for drug and alcohol screening of employees. (Id. ¶ 11).

Plaintiff submitted a urine sample for testing under the FFD program on February 15, 2018. (Id. ¶ 15). The test revealed that plaintiff's blood alcohol level was above the permitted level, and thus plaintiff violated the FFD program. (Id. ¶ 16). This FFD violation was plaintiff's first in his twenty-plus years in the nuclear industry. (Id. ¶ 22). Due to the FFD violation, plaintiff's UA authorization was denied and terminated for a minimum of fourteen (14) days. (Id. ¶¶ 17-18). The medical review officer assured plaintiff that he would return to work before March 31, 2018. (Id. ¶ 19). Instead, on March 23, 2018, defendants notified plaintiff that his employment was terminated. (Id. ¶ 20).

Defendants also have an Employee Assistance Program (hereinafter "EAP"). This program assists employees in resolving personal problems such as, *inter allia*, substance abuse problems. Defendants never provided plaintiff with an opportunity to complete an EAP regarding drug and alcohol abuse, which had been provided to other employees after their first FFD violation. (Id. ¶ 23).

2

Defendants' revocation of plaintiff's UA status evidently stayed with him as he sought employment at other nuclear power facilities. Plaintiff applied for a job at an NRC facility in Louisiana as a work-week manager with a starting salary of $120,000.00 year plus benefits and bonuses. (Id. ¶ 24). Plaintiff failed to obtain the position because he did not have his UA badge. (Id. ¶ 25).

A nuclear power plant in Michigan offered plaintiff a job in or around January 2019. (Id. ¶¶ 26, 28). The starting salary for this job was $120,000.00 a year plus benefits and bonuses. (Id. ¶ 26). One of defendants' employees told representatives at the facility that plaintiff was "unfit for duty at a nuclear facility," and the job offer was rescinded. (Id. ¶¶ 29-30).

Finally, a nuclear power plant in Minnesota offered plaintiff a job making between $80-90 an hour, with twelve-hour shifts, seven days a week for six weeks. (Id. ¶¶ 31-32).

Plaintiff filed the instant four-count complaint based upon these facts. The complaint asserts the following causes of action: Count I- Intentional Interference with Prospective Contractual Relations; Count II-Defamation; Count III-Wrongful Termination; and Count IV- Violation of 10 C.F.R. § 26.75. (Doc. 1, Compl.). In response to the complaint, the defendants filed the instant motion to dismiss Counts III and IV of the complaint. The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

As plaintiff alleges a violation of federal law, we have federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Pennsylvania law applies to plaintiff's state law claims.

**Standard of review**

Defendants filed their motion to dismiss the counts III and IV of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating

4

the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the

5

elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

**Discussion**

Defendants move to dismiss Count III and Count IV of plaintiff's complaint. We shall discuss each count in turn.

**I. Count III**

Count III of plaintiff's complaint asserts a cause of action for wrongful termination. (Doc. 1, Compl. ¶¶ 49-55). Plaintiff asserts that during his ten (10) years of employment with the defendants he performed competently as a production foreman and then as a production supervisor. (Id. ¶ 50). Defendants, however, terminated his employment after his first violation of the FFD program without allowing him to complete the EAP. (Id. ¶ 51). Such conduct on defendants' part violates public policy in that public policy encourages employees to seek counseling for alcohol and substance abuse problems. (Id. ¶ 52). Accordingly, defendant wrongfully discharged plaintiff according to Count III of the complaint. (Id. ¶ 54).

As noted above, Pennsylvania law applies to plaintiff's state law causes of action, including the wrongful termination count. Pennsylvania is an "at-will" employment state and, as such, employers enjoy an almost unfettered right to terminate a worker without cause. See Henry v. Pittsburgh & L.E.R. Co., 21 A. 157 (Pa. 1891) ("A railroad corporation, or an individual may discharge an

emploe with or without cause at pleasure, unless restrained by some contract. . . ."). Therefore, generally under Pennsylvania law, a wrongful termination cause of action does not exist.

The Supreme Court of Pennsylvania and the Court of Appeals for the Third Circuit have, however, recognized an exception that allows a wrongful discharge claim for discharges that violate a clear mandate of Pennsylvania public policy. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (2000); Woodson v. AMF Leisureland Centers, Inc., 842 F.2d 699, 701 (3d Cir. 1988). The Supreme Court of Pennsylvania has determined public policy should be established "by examining the precedent within Pennsylvania, looking to [the Pennsylvania] Constitution, court decisions and statutes promulgated by [the state] legislature." McLaughlin, 750 F.2d at 288. Thus, plaintiff may have a wrongful termination claim only if his termination violated Pennsylvania public policy.

The complaint asserts that defendants terminated plaintiff's employment in violation of the public policy which encourages employees to seek counseling for alcohol and substance abuse problems. (Doc. 1, Compl. ¶ 52). Defendant moves to dismiss the wrongful termination count on the basis that this is not a valid "public policy" ground upon which a wrongful termination claim can be based. After a careful review, we agree with the defendant.

Pennsylvania's public policy exception is only applicable in extremely limited situations. Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 176 (Pa. Super. Ct. 1996). It has only been recognized in the following three circumstances: "[A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with [a] statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003) (quoting Hennessey v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. Ct.1998).

Here, plaintiff argues that the third circumstance applies in that a statute specifically prohibited defendant from discharging him. Plaintiff asserts that the law which prevents his discharge is 10 C.F.R. § 26.35, which provides that:

> Each licensee and other entity who is subject to this part shall maintain an EAP to strengthen the FFD program by offering confidential assessment, short-term counseling, referral services, and treatment monitoring to individuals who have problems that could adversely affect the individuals' abilities to safely and competently perform their duties. Employee assistance programs must be designed to achieve early intervention and provide for confidential assistance.

10 C.F.R. § 26.35(a).

Plaintiff's position is that this regulation is a statute. Plaintiff interprets the regulation/statute as requiring NRC licensees to refer employees who violated FFD protocol to substance abuse programs and restore the employees' UA once

8

the program is complete.  A plain reading of the regulation, however, does not support this interpretation.  The regulation states nothing explicitly regarding an employer's duty to offer an employee the EAP program and their UA being restored once the program is complete.  Further, plaintiff has cited to no authority, and our research has uncovered none, to support his interpretation of the regulation.  Absent anything to the contrary, we cannot find that this regulation imposes the duties which the plaintiff claims it does.  Accordingly, we disagree with plaintiff's assertion that plaintiff's termination violated a federal statute.

     Plaintiff makes one more argument regarding "public policy".  This argument, however, is also unconvincing.  He asserts that Pennsylvania law/public policy favors allowing employees with alcohol or drug-related issues to complete treatment for first offenses before being terminated.  In support his position, however, plaintiff has merely cited to a program available to Commonwealth of Pennsylvania employees.  The program is the State Employee Assistance Program and it deals with Commonwealth employees and their family members who have substance abuse problems.   Plaintiff fails to allege he was a Commonwealth employee and that this law applies to him.  He argues merely that the existence of this program demonstrates the public policy of Pennsylvania.  We are not convinced.  As set forth above, the law of "public

policy" is very narrow and for it to apply one of the circumstances set forth in the case law must be present. See Hunger, 670 A.2d at 176. None of those circumstances are present with respect to the State Employee Assistance Program.

While providing substance abuse programs to employees may be required, plaintiff has cited to no statute, and hence no public policy, that requires an employer to retain an employee who fails a drug and alcohol screening at work. Moreover, the fact that Pennsylvania has the State Employee Assistance Program does not fit this case into any of the circumstances that make applicable the public policy exception to at-will employment. We will grant the motion to dismiss Count III of plaintiff's complaint.

## II. Count IV – Violation of 10 C.F.R. § 26.75

Count IV of plaintiff's complaint avers a violation of 10 C.F.R § 26.75. Defendants move for dismissal of this count. Section 26.75 is a regulation promulgated by the NRC. It provides that for the first violation of a FFD involving a positive drug or alcohol test, an employee's UA must be terminated for a minimum of fourteen (14) days. 10 C.F.R. § 26.75(e)(1). An employer, however, may impose a more stringent sanction for a first-time violation. 10 C.F.R. § 26.75(a).

Here, the defendants did not enact a policy which imposed a more stringent sanction. Therefore, according to the plaintiff his UA badge should have been restored to him fourteen (14) days after his suspension. The badge, however, was not restored, and twenty-one days later, the defendants terminated plaintiff from his employment. Thus, plaintiff seeks to bring a cause of action asserting that defendants violated 10 C.F.R. § 26.75.

The law provides, however, that "Congress did not intend the federal courts to be available to hear cases by a [private] plaintiff . . . for violations of NRC regulations relating to drug testing and security clearance investigations." Conway v. PECO Energy Co., No. CIV. A. 96-7264, 1997 WL 34672 (E.D. Pa. Jan. 28, 1997). In fact, the Atomic Energy Act, which underlies the regulations, provides explicitly, "No action shall be brought against any individual or any person for any violation under this chapter . . . except by the Attorney General of the United States." 42 U.S.C. § 2271(c). Not surprisingly, the Third Circuit Court of Appeals has held that the Atomic Energy Act does not permit enforcement by private litigants and dismissed claims brought under the NRC regulations. Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 238-39 (3d Cir. 1980).

Plaintiff does not counter this law in his brief. He merely argues that failure to allow a private cause of action allows the NRC facilities to flaunt the intentions

and regulations of 10 C.F.R. Pt. 26. Plaintiff, however, cites to no authority to support the position that such a private cause of action is permitted.

Based upon the law, as set forth above, we find that Count IV should be dismissed as it does not provide for a private cause of action.

## III. Jurisdictional Issue

Lastly, the parties address this court's jurisdiction. As set forth above, the plaintiff's claim alleges that we have federal question jurisdiction because the complaint is based upon a violation of 10 C.F.R. § 26.75. We have decided that dismissal of this claim is appropriate. The parties agree, however, that even though we dismiss the federal cause of action, we nonetheless have jurisdiction under the diversity statute. (Doc. 9, Defs' Br. at 10-11, Doc. 10, Pl.'s Br. at 10). As both sides concur in this position, we will not dismiss the case for lack of jurisdiction.

## Conclusion

Based on the above analysis, the defendants' motion for partial dismissal will be granted. We will dismiss Count III, plaintiff's wrongful termination claims and Count IV, the claim for violation of the Nuclear Regulatory Commission regulations. We will, however, retain jurisdiction over this matter. An appropriate order follows.

**Date: Oct. 11, 2019**                    **BY THE COURT:**

                                                          **s/ James M. Munley**
                                                          **JUDGE JAMES M. MUNLEY**
                                                          **United States District Court**